# EXHIBIT A

# ✹✹ Citizens Bank

## HOME EQUITY LINE OF CREDIT AGREEMENT

TOWNES
Loan #:

Borrower(s): **PATRICIA TOWNES**

Lender: **CITIZENS BANK, N.A.**
**ONE CITIZENS PLAZA**
**PROVIDENCE, RI 02903**

---

Date of Agreement: **NOVEMBER 30, 2021**

This HOME EQUITY LINE OF CREDIT AGREEMENT ("Agreement") contains the terms which govern your line of credit (the "Credit Line" or the "Credit Line Account") issued through **CITIZENS BANK, N.A.** as identified above and hereafter referred to as "Citizens Bank". The Agreement sets forth the terms under which Citizens Bank extends credit advances against your Credit Line Account. Each person who signs this Agreement will be bound by its terms and conditions and will be responsible for paying all amounts owed. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Citizens Bank as identified above. **You agree to the following terms and conditions:**

**1. Promise to Pay.** You promise to pay Citizens Bank the total of all credit advances made by us under the terms of this Agreement, any other charges, and **FINANCE CHARGES** due, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures this Agreement. You will pay your Credit Line according to the payment terms set forth below.

**2. Term.** The term of your Credit Line will begin as of the date of the Agreement ("Opening Date") and will continue until termination of your Credit Line Account. All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon termination. The "Draw Period" of your Credit Agreement will begin on a date, after the Opening Date, when the Agreement is accepted by the State of Rhode Island following the expiration of the right to cancel, and the meeting of all of our other conditions and will continue for a period of ten (10) years, subject to the terms and conditions of this Agreement. You may obtain credit advances during the "Draw Period" not to exceed, at any time, the credit limit of your line of credit, which is **$75,000.00** and more fully described in **paragraph 5**, "Credit Limit". After the Draw Period ends, the Repayment Period will begin; and you will no longer be able to obtain credit advances. The length of the Repayment Period is Fifteen (15) Years. The end of the Fifteen (15) Years is known as the "Maturity Date".

**3. Payments.**

    a) **Draw Period**

You can obtain advances of credit for ten (10) years (the "Draw Period"). You have chosen the payment option checked below. The option checked below is based on the option that was indicated on your home equity application. If no option was indicated on your application, the loan will default to Option One (Interest Only).

    ☒ **Option One:** Monthly interest-only payments - Under this option, your payments will be due monthly and will equal the finance charges that accrued on the outstanding principal balance during the preceding billing period, plus insurance premiums (if any), all other charges and any amount past due. The Minimum Payment will not reduce the principal that is outstanding on your Credit Line Account. This option will result in greater expenses over the life of the Credit Line Account.

NOVEMBER 28, 2021

☐ **Option Two:** 2% of the balance - Under this option, your payments will be due monthly and will equal 2% of the New Total Balance (which includes the principal balance and outstanding **FINANCE CHARGES** as of the end of the billing period plus insurance premiums [if any], and all other charges), plus late fees and any amount past due. The Minimum Payment will equal $20.00 or the outstanding balance on your Credit Line Account, whichever is less.

**b) Changing Your Draw Period Payment Option**

You may change your Draw Period Payment Option from Option 1 to Option 2, or from Option 2 to Option 1. You must ask us in writing at least 15 days before the start of the billing cycle in which you want to change your Draw Period Payment Option.

We do not have to let you change your Draw Period Payment Option if; (i) any of your payments under this agreement are past due at the time you make your request, (ii) your account balance is higher than your credit line at the time when you ask us to change your Draw Period Payment Option, or (iii) we, in our sole discretion, believe that your account is not in good standing.

**c) Repayment Period**

*After the draw period ends, you will no longer be able to obtain credit advances and must pay the outstanding balance over 15 years (the "repayment period").* During the repayment period, payments will be due monthly. Your minimum monthly payment will equal 1/180th of the balance that was outstanding at the end of the draw period plus the **FINANCE CHARGES** that have accrued on the remaining balance, plus any amount past due and all other charges or $20.00; whichever is greater.

**d) Payments**

All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address on any business day will be credited to your Credit Line as of the date received so that finance and other charges will not accrue. However, the Lender may delay for a reasonable time the availability of the funds until Lender has had an opportunity to confirm the validity of the payment. Payments may also be made at any of our branch offices. You may also make payments by authorizing us to debit your Citizens Bank checking account each month in the amount of the Minimum Payment or you can make payments using online banking or mobile banking. Payments sent by mail must be mailed early enough to insure receipt by us on the Payment Due Date.

**4. Application of Payments.** Unless otherwise agreed or required by applicable law, during the Draw Period, payments and other credits will be applied in the following order: to the oldest unpaid billings first, and then sequentially to any other unpaid billings from the oldest to the most current. Payments in excess of billed amounts will be credited to your account. During the Repayment Period, your payments will be applied in the following order, assuming that it is made by the Payment Due Date: (a) The interest portion of the unpaid Minimum Payment; and (b) any additional amount paid that exceeds interest due will next be applied to the principal portion of the unpaid Minimum Payment. If you make a payment greater than the Minimum Payment, but less than the Total Due shown on your periodic statement you will still be required to make the Minimum Payments in the months that follow. We will refund to you any credit balance upon request if there is a credit balance on the date we receive the refund request.

**5. Credit Limit.** This Agreement covers a revolving line of credit for $75,000.00 which will be your "Credit Limit" under this Agreement. This is the maximum credit that is to be extended to you. If the Credit Limit is exceeded, you will be in default of a material obligation under this Agreement and the provisions of **paragraph 7**, "Limitations on Use of Checks" will apply. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree

NOVEMBER 28, 2021

to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you.

**6. How to Use the Credit Line.** You may obtain credit advances under your Credit Line by writing a preprinted "check" that we will supply to you. Credit Line checks are specially designated checks which can be completed just like any other check. Each check written and negotiated will create a check advance from us to you. Checks drawn on the Account on forms other than those forms supplied by us for that purpose will not be honored. Each check you write will be paid with a check advance from your Account unless you are in default under this Agreement, as described in **paragraph 22**, "Termination and Acceleration", or in those circumstances described in **paragraph 7**, "Limitations on Use of Checks." Your use of a check will be reflected on your periodic statement as a check advance. Credit Line checks will not be certified by us and you agree that we may retain the actual checks written by you, and need not return the original checks to you. You may also obtain credit advances from your Credit Line by transfering funds from your Citizens Home Equity Line of Credit to your Citizens checking using online banking or mobile banking. We may also provide additional ways of using your Account from time to time.

If there is more than one person authorized to use this Credit Line Account, each of you agree not to give us conflicting instructions, such as one of you telling us not to give check advances to the other.
Any such instructions will not be followed by us. However, any one of you may cancel your Credit Line under **paragraph 29**, "Cancellation by You".

**7. Limitations on Use of Checks.** We reserve the right not to honor Credit Line checks in the following circumstances:

  (a) Your Credit Limit has been, or would be, exceeded by paying the check.
  (b) Your check is post-dated. If a post-dated check is paid and as a result any other check is returned or not paid, we are not responsible, subject to any applicable law.
  (c) Your checks have been reported lost or stolen.
  (d) Your check is not signed by an "Authorized Signer" as defined below.
  (e) Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the check.
  (f) You are in violation of any other transaction requirement or would be if we paid the check.

If we pay any check under these circumstances, you must repay us, subject to applicable laws, for the amount of the check. The check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor.

**8. Authorized Signers.** The words "Authorized Signer" on checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, and (b) signs this Agreement.

**9. Stop Payments.** We do not honor stop payment orders for checks drawn against your Credit Line Account. You therefore should not use your Credit Line Account if you anticipate the need to stop payment. You agree that we will have no liability to you or to any other party because we do not honor stop payment orders.

**10. Lost Checks.** If you lose your checks or someone is using them without your permission, you agree to notify us immediately. The fastest way to notify us is by calling us at (800) 922-9999. You also can notify us at Citizens Bank, Consumer Loan Servicing, One Citizens Bank Way, Johnston, RI, 02919.

**11. Charges to Your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, under the Mortgage or under any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the **paragraph 13 (a)**, "Insurance" or as described in the Mortgage. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so

NOVEMBER 28, 2021

charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**12. Collateral.** This Agreement is secured by a Mortgage dated **NOVEMBER 30, 2021** to us on property located in **PHILADELPHIA** County, State or Commonwealth of **PENNSYLVANIA**, (the "Property"). We have the right, but are not required to take such action as is necessary to protect our Security Interest described in this paragraph. Any amounts we may pay in exercising our right to protect our Security Interest must be paid by you on demand, and will bear interest at the <u>ANNUAL PERCENTAGE RATE</u> then applicable to your account.

**IMPORTANT NOTICE ABOUT YOUR REAL PROPERTY COLLATERAL:** If the deed to the property you are pledging as security for this loan includes more than one parcel of land, the mortgage you are requesting will be secured by ALL parcels described in your deed. If your deed contains more than one parcel of land and you do not want to pledge all of them as security for your loan you should contact your legal representative.

**13 (a). Insurance.** You must obtain insurance on the Property securing this Agreement through any company of your choice that is reasonably satisfactory to us. With respect to hazard (non-flood) insurance, the insurance shall be for the replacement cost of the buildings or appurtenances on the Property. You must name **CITIZENS BANK, N.A.** as mortgagee on all required insurance policies. The insurance you maintain must provide for ten (10) days notice of cancellation to us. If the Property is located in a designated Flood Zone, you must also maintain flood insurance on the Property in an amount we disclosed to you in writing before you entered into this Agreement. Subject to applicable law, if you fail to obtain or maintain insurance as required herein or in the Mortgage, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

In the event the Borrower fails to obtain and maintain any insurance on the Property required by the Lender, the Borrower understands and agrees that the Lender may, at its option (unless required to do so by applicable law), obtain and maintain the required insurance and pay the premium(s) for such insurance, and either: (i) add the cost of the insurance to the unpaid principal balance owed under the Agreement (in which case the Borrower agrees to repay the cost of the insurance in accordance with the repayment terms of the Agreement), (ii) bill the Borrower separately (in which case the Borrower agrees to pay the bill immediately) or we will (iii) establish escrow pursuant to Section 13 (b) "Escrow". The Borrower agrees to pay interest on any such amounts at the interest rate provided in the Agreement until such amounts are repaid in full. The Borrower understands and acknowledges that any insurance obtained and maintained by the Lender may (i) only protect the interests of the Lender and any other creditor with a prior mortgage on the Property, and (ii) be more expensive than insurance obtained and maintained by the Borrower.

**13 (b). Escrow.** If lender determines that borrower has not paid property taxes or community associates dues/fees/assessments, or has not established insurance as required by Section 13 (a) "Insurance", Lender may establish an escrow account pursuant to the Real Estate Settlement Procedures Act, and require borrower to pay monthly amounts into said escrow account. Borrower agrees that the escrow account payment will be in addition to the payment amounts otherwise agreed to in this Agreement.

**14. Right of Setoff.** We have the right under the law to transfer funds held in any deposit account that any person who signs this Agreement has with us or an affiliated bank, to pay or reduce your obligations if you are in default under this Agreement or we terminate or accelerate your Credit Line Account. You grant to us a contractual possessory security interest in, and hereby assign, convey, deliver, pledge, and transfer to us all right, title and interest in and to, your accounts with us (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts you may open in the future, excluding however all IRA, Keogh, and trust accounts. You authorize us, to the extent permitted by applicable law, to charge or set off all sums owing under this Agreement against any and all such accounts.

**15. Periodic Statements.** We will send you a periodic statement for all check advances made under this Agreement during the Draw Period and for all monthly payments due during the Repayment Period. The statement will show, among other things,

NOVEMBER 28, 2021

payments and credits, check advances, **FINANCE CHARGES**, insurance, and other charges, your Previous Total Balance, and your New Total Balance. Your statement also will identify the Minimum Payment you must make for that billing period and the Payment Due Date. All periodic statements shall conclusively be considered to be correct and accepted by you unless we are notified in writing of any alleged errors within 60 days after receipt.

**16. FINANCE CHARGES.** You will pay a **FINANCE CHARGE** on the outstanding amount of the principal balance under your Credit Line, once each billing cycle during the Draw Period and the Repayment Period. The **FINANCE CHARGE** will begin to accrue on the date advances are posted to your Credit Line Account. There is no "grace period" which would allow you to avoid a **FINANCE CHARGE** on your Credit Line advances. **FINANCE CHARGES** do not accrue on any undisbursed proceeds.

**17. Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** We figure the **FINANCE CHARGE** on your account by applying the daily periodic rate to the average daily balance of your Credit Line Account and then multiply by the number of days in the billing cycle. To get the average daily balance, we take the total beginning balance of your Credit Line Account each day and add new advances and subtract the principal portion of any payments and credits. The beginning balance for the period is the New Principal Balance amount from your previous statement. To determine the principal portion of a payment, subtract any unpaid **FINANCE CHARGES** then insurance premiums (if any) and membership fees and other charges (if applicable). This gives us the daily principal balance each day. Then we add up all the daily principal balances for the billing cycle and divide the total by the number of days in the billing cycle (the number of days since your last statement). This gives us the average daily balance. The average daily balance does not include **FINANCE CHARGES**, insurance premiums, membership fees or other charges.

**18. How You May Compute the FINANCE CHARGES On Your Line of Credit Account.** When the average daily balance has been computed, you multiply the average daily balance by the daily periodic rate which is arrived at by dividing the **ANNUAL PERCENTAGE RATE** by the number of days in the year. The result is multiplied by the number of days in the billing cycle. This figure is the **FINANCE CHARGE** assessed for the billing cycle.

**19. Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. We start with an independent index, (the "Index"), which is *The Wall Street Journal* Prime Rate, published daily in the listing of "Money Rates." We will use the Index value published on the last business day of each month for any **ANNUAL PERCENTAGE RATE** adjustment. If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement similar to the original Index and margin, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original Index becomes unavailable. The Index is not necessarily the lowest rate charged by us on our loans. To determine the Periodic Rate that will apply to your Credit Line Account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE**, we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE**. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect on the first day of the next billing cycle. The maximum **ANNUAL PERCENTAGE RATE** during the Draw Period of your Credit Line will be **21.000%**. The maximum **ANNUAL PERCENTAGE RATE** during the Repayment Period of your Credit Line will be **21.000%** or the maximum rate allowed by applicable law. In no event will the **ANNUAL PERCENTAGE RATE** be less than 2.500% during the life of your Credit Line. As of the last business day of the calendar month before the date of this Agreement, the Index was **3.250%** per annum.

Based on that Index value, we estimate that the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line for the first billing cycle will be as stated below: The initial Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** actually in effect during the first billing cycle, which will be disclosed on your first periodic statement,

NOVEMBER 28, 2021

may differ from these estimates if the Index changes between the date this Agreement was printed and the date you sign this Agreement.

| Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|
| 3.750% | 7.000% | 0.01918% |

**20. Annual Fee.** There is no Annual Fee for the first year. Thereafter, a non-refundable Annual Fee of $50 will be charged to your Credit Line Account on each anniversary of your Credit Line, during the Draw Period. There is no annual fee if you have the Citizens GoalBuilder™ Home Equity Line of Credit (income and geographic limitations apply).

**21 (a). Late Charges.** Depending on the state or commonwealth identified above, your late fee will be calculated as follows:

Your payment will be late if it is not received by us within 15 days of the "Payment Due Date" shown on your periodic statement. If your payment is late, we may charge you 5.000% of the payment or $20.00, whichever is less.

**21 (b). Automatic Payment Benefit:** Borrowers will be eligible to receive a 0.25 percentage point interest rate reduction on their Citizens Bank Home Equity Line of Credit if, at origination, borrower elects to have payments automatically deducted each month from a Citizens Bank checking account the borrower designates. If we are unable to successfully withdraw the automatic deductions from the designated account two or more times within any 12 - month period, Citizens Bank reserves the right to remove eligibility.

**21 (c). Recording Fee.** Upon termination and full payment of all obligations on your Credit Line Account, we will charge you the fee required by the registry of deeds to record the discharge of the Mortgage.

**22. Termination and Acceleration.** The entire unpaid balance of your Credit Line Account, including unpaid fees and **FINANCE CHARGES**, shall at our option become immediately due and payable and we can terminate your Credit Line Account by sending you notice, if any of the following occur:

- (a) You have at any time in connection with this Credit Line Account, including your application for same, committed fraud or have made, or make at anytime, any material misrepresentation;

- (b) Failure to make any payment under this Agreement;

- (c) Your action or inaction adversely affects the collateral for the Credit Line Account or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, failure to maintain adequate insurance for the Security, death of all persons liable on the Credit Line Account or the death of any of the Borrowers if the collateral is adversely affected by such death, transfer of title or sale of the Property, the Property is taken through eminent domain, creation of a senior lien on the Property without our permission, foreclosure by the holder of a prior lien or the use of the dwelling for prohibited purposes if it subjects the Property to seizure.

**23. Suspension or Reduction.** In addition to any other rights we may have, (neither notice nor your agreement is required), we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

- (a) The value of the Property declines significantly below the Property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances;

- (b) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances;

NOVEMBER 28, 2021

(c) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under **paragraph 22**, "Termination and Acceleration", obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the Property, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the Property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances;

(d) Government action prevents us from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement, or impairs our security interest such that the value of the Property is less than 120 percent of the credit line;

(e) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice. We may charge your account for appraisal and Credit Report fees we incur in investigating whether any condition permitting us to suspend your credit privileges or reduce your credit limit continues to exist;

(f) The maximum **ANNUAL PERCENTAGE RATE** is reached.

If your Credit Line is suspended or terminated, you must immediately destroy all Credit Line checks and any other access devices. Any use of checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of such checks or other Credit Line access devices not returned to us.

**24. Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems).

**25. Collection Costs.** If you fail to abide by any terms of this Agreement, and if we are permitted to do so by applicable law, we may hire or pay someone else to help collect your Credit Line Account. You will pay all reasonable collections costs, including reasonable attorney's fees incurred by us in the collection of amounts due under this Agreement to the extent not prohibited by applicable law. This includes, subject to any limits under applicable law, our legal expenses whether or not there is a lawsuit and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay of injunction), appeals, and any anticipated post-judgment collection services.

**26. Delay in Enforcement.** Failure at any time by us to exercise any of our rights hereunder shall not constitute a waiver of our right to exercise the same at a later time.

**27. Default.** You will be in default under this Agreement if any of the following occurs, each of which constitutes a breach of a material obligation of yours under this Agreement:

(a) You fail to make any payment when due or to pay any charge or fee when due;

(b) Your action or failure to act adversely affects our security for your Credit Line Account or a right we have in the security;

(c) A court determines that you are bankrupt or insolvent; or

(d) You gave or give us false or materially misleading information in connection with any extension of credit to you under your Credit Line Account.

NOVEMBER 28, 2021

**28. Results of Default.** If you are in default, we may lower your Credit Limit, we may refuse to make any further advances under this Agreement, we may refuse to pay any outstanding checks that would require us to make an additional credit advance to you, we may foreclose on the real property described in the Mortgage securing your Credit Line Account, we may take whatever other action is permitted under the Mortgage, and we may exercise any and all of our rights with respect to any other property securing your Credit Line Account. We also may demand that you pay the full amount you owe on your Credit Line Account immediately.

You agree to pay any costs we incur in collecting what you owe following your default to the extent not prohibited by applicable law. If we have to sue you to collect what you owe, you agree to pay our legal fees, including court costs to the extent not prohibited by applicable law. In addition to our other rights and remedies under this agreement and the Mortgage, we reserve the right to honor the check or other device used to obtain an advance without permanently raising your credit limit. If we honor the check or other device, the amount that is more than your credit limit will be due and payable immediately.

**29. Cancellation by You.** If you cancel your right to credit advances under this Agreement, you must notify us in writing and destroy all Credit Line checks and any other Credit Line Account access devices. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement **and you will continue to remain liable for any further credit advances.**

**30. Prepayment.** You may make additional payments or may pay back more than the Minimum Payment Due at any time without penalty, **subject to Section 21 (b)**, except we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. If you mark a check, money order, or other instrument sent in payment with "Paid in Full" or with similar language, we may accept the payment, and you will remain obligated to pay any further amount owed to us under this Agreement.

**31. Notices.** All notices will be sent to your address as shown in this Agreement unless you notify us in writing of any change in your address or name within thirty (30) days of the change. On joint accounts, notices sent to one will be considered notice sent to all.

**32. Information About You.** You authorize us to get financial information about you from third parties, including, but not limited to, a credit bureau, your employer, or another financial institution. You also authorize us to disclose information about your creditworthiness and this Account to a credit bureau, our affiliates and subsidiaries, and to others, unless expressly prohibited by applicable law. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense, except as provided for in **paragraph 23, "Suspension or Reduction"**.

**33. Documentation.** You agree to execute or re-execute any document that we request in order to correct any error or omission in the original Agreement, security instrument, or other Credit Line Account related documents, including, but not limited to, Confirmatory or Corrective security instruments.

**34. Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity, or person, and to assign our rights under the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

**35. NEGATIVE INFORMATION:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**36. Tax Deductibility.** You understand that Lender makes no representation or warranty whatsoever concerning the tax consequences of this Credit Line Account, including the deductibility of interest, and that you should consult with your own tax advisor for guidance on this subject. You also agree that Lender shall not be liable in any manner whatsoever should the interest paid on the Credit Line Account not be deductible.

NOVEMBER 28, 2021

**37. Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and to the extent not preempted by the laws of the state where the Property is located, except for matters related to interest and the exportation of interest, which matters will be governed by and interpreted in accordance with federal law and the laws of the State of Rhode Island. The loan transaction which is evidenced by this and other related documents has been approved, made, funded, and all necessary documents have been accepted by Lender in the State of Rhode Island.

**38. Interpretation.** The names given to paragraphs or sections in this Agreement are for reference purposes only. They are not to be used to interpret or define the provision of this Agreement. You agree that this Agreement, together with the Mortgage, is the best evidence of your agreement with us. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court may enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage, or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**39. Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a copy of this Agreement, including the Fair Credit Billing Notice and the early Home Equity Line of Credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," and disclosures/notices provided under applicable state law; given with the application before signing the Mortgage and before using your Credit Line Account.

If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the other Borrowers will remain responsible.

---

You, the undersigned, certify that you have insured the property as identified in **Section 12**, entitled "Collateral", against loss by fire for the replacement cost of the buildings or appurtenances on the Property, and that the policy includes extended coverage and has a standard mortgagee clause making loss payable to **CITIZENS BANK, N.A.**, as its interest may appear. You agree to maintain such insurance until this Agreement is paid in full.

You understand that you may purchase any required insurance through any duly licensed insurance agent and insurance company that is reasonably acceptable to us. You are not required to deal with any of our affiliates when choosing an insurance agent or insurance company. Your choice of a particular insurance agent or insurance company will not affect our credit decision, so long as the insurance provides adequate coverage with an insurer that meets our reasonable requirements.

All documents related to insurance for this loan should be mailed to the following address:
Citizens Bank, Consumer Finance Operations
PO Box 42008
Providence, RI 02940-2008
(800)708-6680

---

You acknowledge that you authorize us (and our affiliates, agents and contractors) to contact you at any number you provide to us, from which you call us, or at which we believe we can reach you, and that we may contact you for any reason, including regarding any request you make for a loan or other product, to service or collect on every account you currently have with us or may have with us in the future and regarding any other products or services we are providing to you or which we provide to you in the future.

NOVEMBER 28, 2021

You authorize us to contact you in any manner, including by means of automated dialing devices, prerecorded messages, wireless push notifications, or text messages, even if you are charged for receiving the communication and even if you will receive the communication on a mobile or wireless device. You agree that such calls are not unsolicited and that we may monitor and/or record them.

**You acknowledge** that any payoff amounts referenced in the of Authorization of Payments to Third Parties section of this Agreement were estimates based on the balances listed on your credit bureau report(s), or obtained from the lien creditors on your behalf.

**You acknowledge** that you received and read, as applicable, the Home Equity disclosure statements provided to you during the application process, which include *What you should know about Home Equity Lines of Credit, Privacy Notice and the package of initial disclosures.*

If there is more than one signer below, it is my/our intention that this account be a joint account.

**You acknowledge** that with your application, you provided your consent to us to check your employment and credit history with any source and to answer questions about your credit experience with us.

**By signing below you acknowledge** the initial Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** actually in effect during the first billing cycle, which will be disclosed on your first periodic statement, may differ from these estimates if the Index changes between the date this Agreement was printed and the date you sign this Agreement.

| Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|
| 3.750% | 7.000% | 0.01918% |

**By signing below you acknowledge** that any payoff amounts referenced in the of Authorization of Payments to Third Parties section of this Agreement were estimates based on the balances listed on your credit bureau report(s), or obtained from the lien creditors on your behalf.

**Authorization of Payments to Third Parties**

Recording Fee: If you are paying off and closing an account secured by a Citizens Bank, N.A. lien, the payoff amount listed below includes a fee of $_____ to record the discharge.

|   |   |   |
|---|---|---|
|   | $75,000.00 | Credit Limit |
|   | $ | Customer |
|   |   | Amount paid to others on my behalf |
| + | $ | Amount received from borrower |
| - | $ | Total fees to be paid by borrower |
| - | $75,000.00 | Undisbursed Funds |

Disbursement Account Information:

Account Type:                                Account Number: _____

You understand that no loan proceeds will be disbursed until any notice of the right to cancel time period specified has expired.

You authorized disbursements to lien creditors and to Citizens Bank loan or line accounts listed above and acknowledge receipt of a

NOVEMBER 28, 2021

filled in copy of this itemization of amount financed.

Citizens Bank will provide to you the disbursement check(s) payable to non-lien creditor(s) listed above. You are to forward the referenced disbursement check(s) directly to named creditor(s) for appropriate processing by the non lien creditor. In order to secure our lien position, Citizens Bank is authorized to add to the principal balance, or access deposit accounts to cover any shortage.

In the event a pay-off sent to another creditor is insufficient, Citizens Bank is authorized to add to the principal balance, or access your deposit account funds held by us to cover such shortage in order to complete your transaction and secure our lien position. You will receive notification in the event an additional amount is needed. This amount should not exceed $1,000.00; further remedies may apply if a greater amount is needed.

This may result in a higher final payment due.

**READ THIS AGREEMENT BEFORE YOU SIGN. REVIEW THE AUTHORIZATION OF PAYMENTS TO THIRD PARTIES SECTION, IN PARTICULAR ENSURE DISBURSEMENT ACCOUNT INFORMATION IS ACCURATE. LOAN PROCEEDS WILL BE DISBURSED TO THE ACCOUNT LISTED. DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. THE AGREEMENT IS SECURED BY A SECONDARY MORTGAGE ON YOUR REAL PROPERTY.**

This Agreement is dated NOVEMBER 30, 2021. THIS AGREEMENT IS SIGNED UNDER SEAL.

BORROWER:

*Patricia Townes  11/30/21*
- BORROWER - PATRICIA TOWNES - DATE -

Effective Disbursement Date: DECEMBER 6, 2021

NOVEMBER 28, 2021

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on the back of your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

> Your name and account number.
>
> The dollar amount of the suspected error.
>
> Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including **FINANCE CHARGES**, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If we didn't make a mistake, you may have to pay **FINANCE CHARGES**, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

NOVEMBER 28, 2021